IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE HEN HOTEL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. _____ |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| CHARLES P. ARENA, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

AND NOW COMES Plaintiff, Blue Hen Hotel, LLC ("Blue Hen"), by its undersigned counsel and files this Complaint against Defendant, Charles P. Arena, and in support thereof, avers upon knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

## PARTIES

1.  Plaintiff, Blue Hen, a limited liability company organized and existing under the laws of the State of Delaware with an office at Room 112, Hullihen Hall, Newark, Delaware 19716, is the owner of a project known as Courtyard by Marriott, New London Road, Newark, Delaware 19716.

2.  The joint venture owners of Blue Hen are the University of Delaware (which will use facilities at the Courtyard by Marriott as part of the academic program of its Department of Hotel, Restaurant and Institutional Management) and Shaner Hotel Group, L.P., by its general partner Shaner Operating Corp.,1965 Waddle Road, State College, Pennsylvania.

3.  Defendant Charles P. Arena, is an individual and citizen of Pennsylvania residing at 270 Park Place, Media, Pennsylvania and was at all relevant times President and sole owner of

- 2 -

C. Arena & Co., Inc., which was a general contractor with an office located at 5 N. Providence Road, P. O. Box 215, Wallingford, Pennsylvania 19086.

## JURISDICTION

4.  Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship, because plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5.  Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b), a substantial part of the events giving rise to this claim occurred in New Castle County, Delaware.

## FACTS

6.  In June, 2002, Blue Hen invited bids for the construction of a Courtyard by Marriott hotel facility consisting of a four-story structure of approximately 70,000 square feet and containing 126 hotel rooms and other ancillary facilities (the "Project"). The work of the general contractor included architectural, mechanical, electrical and plumbing systems.

7.  In reply to Blue Hen's advertisement for bids and in accordance with the instructions to bidders, on or about July 2, 2002, C. Arena & Co., Inc. (hereinafter "Arena & Co.") submitted a lump sum base bid in the amount of $6,698,000.00, which was the low bid for the construction of the Project.

8.  Blue Hen entered into an Agreement with Arena & Co. dated July 22, 2002 governing their respective rights and obligations for the Project. The construction start date was September 30, 2002, with the date of substantial completion on July 29, 2003.

9.  The Project was not completed in July, 2003 and was delayed by Arena & Co.'s failure to prosecute the work or to supply enough skilled workmen or proper materials. By letter dated September 12, 2003, Arena & Co. was terminated for cause effective September 22, 2003.

- 3 -

10. The Agreement contained a provision §11.3, requiring that payment applications from subcontractors would be included by Arena & Co. with its own periodic payment applications to Blue Hen, that Blue Hen would pay Arena & Co. for the work of the subcontractors, and that Arena & Co. would pay the subcontractors "within 5 working days after Contractor receives payments from Owner for the Subcontractor's work."

11. Arena & Co. submitted payment applications from subcontractors to Blue Hen along with Arena's own payment applications, and Blue Hen paid Arena & Co. those amounts due to subcontractors.

12. Arena & Co. submitted sworn certifications to Blue Hen on each monthly payment application that Arena & Co. had paid subcontractors for all work performed to date, for which payment was requested and received from Blue Hen. On the basis of those certifications, Blue Hen included in its payments to Arena & Co., substantial amounts to reimburse Arena & Co. for payments Arena & Co. claimed were owed to Arena & Co.'s subcontractors.

13. Over the course of the Project, Blue Hen paid a total of $1,676,402 to Arena & Co. that was due to subcontractors, excluding retainage. Of this amount, Arena & Co. only paid subcontractors $1,001,400, excluding retainage.

14. Because of Arena's failure to pay subcontractors, Blue Hen has been sued in the Delaware courts in mechanics lien actions brought by Arena & Co. subcontractors, seeking payment for work performed on the Project, for which Blue Hen already paid Arena & Co. Mechanics lien actions have been filed by subcontractors Oldcastle Precast Building Systems, All-Span, Inc., First State Construction, Inc., second tier subcontractor Energy Products & Service, Co., and third tier subcontractor Diversified Construction Staffing, Inc.

15. Additionally, as a result of Arena & Co.'s failure to pay subcontractors, Blue Hen has had to make payments to other subcontractors who (although they had not yet filed mechanics' lien actions against the Project) were able to establish that Arena & Co. had not paid them monies which Blue Hen had paid to Arena & Co. for their work.

16. To date, and in addition to its legal costs and expenses of these state court actions, Blue Hen has paid Arena's subcontractors in excess of $484,382, all of which is payments that Arena wrongfully failed to pay to subcontractors after it received payment from Blue Hen.

### Basis for Disregarding the Corporate Form of Arena & Co., Inc. and Recovering Directly From Charles P. Arena

17. Blue Hen is entitled to pierce the corporate veil of Arena & Co., Inc. and recover directly from Arena personally. At the time of the payments at issue, Arena & Co., Inc. was grossly undercapitalized, and failed to follow proper corporate formalities. In addition, Arena improperly intermingled personal and corporate assets and used corporate control and corporate assets to further his own personal interests.

18. On or about April 13, 2004, Defendant Arena caused his company, C. Arena & Co., Inc., to file for voluntary liquidation under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Pennsylvania, docket number 04-15212.

19. During the Bankruptcy proceedings, the assigned chapter 7 trustee reported that the debtor, C. Arena & Co., Inc., had no assets, and therefore there would be no distribution of money owed to creditors, including plaintiff Blue Hen.

20. In order to pursue its rights against defendant Arena, Blue Hen sought and obtained an order permitting it to inspect and copy records of Arena & Co., compelling defendant Arena to appear and give sworn testimony by deposition, and compelling Arena & Co.

- 5 -

to preserve all documents which Blue Hen sought to discover. This order was entered in Bankruptcy Court on or about July 26, 2004.

21. In a further effort to protect its rights, Blue Hen sought and obtained an order compelling the U. S. Trustee to waive attorney-client and other applicable privileges relating to Arena so that the Trustee could be interviewed concerning the handling of funds by Arena & Co., including the fate of the payments made by Blue Hen to Arena & Co. in trust for the benefit of subcontractors. That Order was entered on or about August 24, 2004.

22. In response to the above motion, the U. S. Trustee stated that he consented to entry of that order, and the debtor, Arena & Co., did not contest entry of the order. As a result, Arena & Co, has waived all claims of attorney-client privilege and other applicable privileges that could have applied to conversations with and information given to the U.S. Trustee in connection with the Arena & Co. bankruptcy.

23. On information and belief, Charles Arena diverted funds paid to his company, through salary and compensation, through payments for alleged loans made by Arena to his company, and through payments to himself that were characterized as fees to "Arena Construction Management" or "Arena Consulting Group" or other means, that included payments that were made by Blue Hen in response to payment applications from Arena.

24. Arena is directly liable to Blue Hen under the participation theory, in that he personally participated in the wrongful acts and fraud against Blue Hen.

## COUNT I

## VIOLATION OF DELAWARE PROMPT PAYMENT ACT

25. Plaintiff incorporates the averments contained in paragraphs 1-24 by reference herein as if they were set forth in full.

26. By submitting the payment applications, Arena & Co. represented to Blue Hen that specific payments were due to subcontractors for work already performed, not work to be performed in the future. The payment applications establish that those amounts identified as due to specific subcontractors were not to be mingled with general funds in the project, and that Arena & Co. was not entitled to change its mind about how to apply those funds. Any use of those funds other than to pay the subcontractors identified in the payment application constituted a misappropriation of funds in violation of 6 Del. Code § 3503.

27. Under Delaware law, the payments made by Blue Hen to Arena & Co. as general contractor for the Project were held in constructive trust for the subcontractors, and Arena & Co. owed fiduciary duties to the subcontractors to promptly forward the money it received to the subcontractors.

28. Subsequent to the termination of Arena & Co., Blue Hen discovered that despite its own payments to Arena & Co., the subcontractors had not been paid, and that Charles P. Arena and C. Arena & Co., Inc. by fraud, deception and in violation of Building Construction Payments Act, 6 *Del. C.* § 3501 *et seq*., had kept such payments for themselves. Arena actively concealed the fact that those payments had been withheld from the subcontractors.

29. Because Arena & Co. failed to pay the subcontractors, despite having a fiduciary duty to do so, plaintiff Blue Hen has been required to satisfy those debts on Arena & Co.'s behalf.

30. Blue Hen is entitled to enforce its rights under the Delaware Prompt Payment Act directly against Arena personally, by piercing the corporate veil and proceeding individually against Arena, the president and sole owner of Arena & Co.

- 7 -

## COUNT II

## VIOLATION OF CONSUMER FRAUD ACT

31.     Plaintiff incorporates the averments contained in paragraphs 1-30 by reference herein as if they were set forth in full.

32.     The payment applications were presented to Blue Hen by Arena & Co. with the intent to induce reliance on false or misleading statements concerning payments to subcontractors, in violation of the Consumer Fraud Act, 6 Del. C. § 2513.

33.     Defendant Arena used deception, fraud, false pretense, false promises, misrepresentations, or the concealment, suppression, or omission of material facts with intent that Blue Hen rely upon such concealment, suppression or omission, in order to induce Blue Hen to pay substantial sums requested by payment application on behalf of subcontractors with the intent to divert those funds to other purposes, including payments to Arena personally.

34.     Blue Hen reasonably and justifiably relied on the intentionally false certifications executed by Arena personally, or at his request.  As a result of Arena's fraudulent certifications, Blue Hen incurred liability directly to subcontractors for the same amounts it already paid to Arena & Co.

## COUNT III

## FRAUDULENT CONVEYANCE

35.     Plaintiff incorporates the averments contained in paragraphs 1-34 by reference herein as if they were set forth in full.

36.     Plaintiff Arena is an insider as defined in the Delaware Fraudulent Conveyance Act, 6 Del. Code §1301(7), and Arena & Co. was insolvent as defined under §1302 at the time that Arena sent payment applications to Blue Hen requesting payment on behalf of subcontractors.

37. Arena caused his solely-owned and insolvent company to transfer funds to himself personally without receiving reasonably equivalent value, or with actual intent to hinder, delay or defraud Blue Hen, in violation of 6 Del. Code § 1304(a).

38. Arena transferred a 1989 backhoe to a landscaping company on November 30, 2003, with no value assigned to the equipment, even though Arena owed Blue Hen and others hundreds of thousands of dollars. It also transferred two storage garages containing construction equipment to an individual in November 2003, but listed the value as only $3,000.

39. Blue Hen is entitled to recover those wrongfully transferred funds from Arena, as transferee, as well as any proceeds he received from the above described or other questionable transfers of assets.

WHEREFORE, Plaintiff, Blue Hen Hotel, LLC, respectfully requests this Honorable Court to enter judgment in its favor and against Defendant, Charles P. Arena, and to grant the following relief:

1) A declaration that the corporate veil of C. Arena & Co., Inc. shall be pierced and disregarded, and that Blue Hen is entitled to recover directly from Charles P. Arena;

2) An award of $484,382, together with interest at the legal rate;

3) Treble damages under the Delaware Consumer Fraud Act; and

4) Attorneys' fees, costs and such other relief as the Court may deem just and proper.

- 9 -

|  |  |
|---|---|
| Dated: April 15, 2005 | **WHITE AND WILLIAMS LLP** |
|  | By: ___/s/ F.E. Noyes_____ |
|  | Frank E. Noyes, II (#2306) |
|  | 824 North Market Street, Suite 902 |
|  | P. O. Box 709 |
|  | Wilmington, DE  19801 |
|  | Telephone:  (302) 467-4511 |
|  | *Attorneys for Plaintiff Blue Hen Hotel, LLC* |

*Of Counsel:*
Michael N. Onufrak, Esquire
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA  19103