Westlaw

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 641737
(Cite as: Not Reported in F.Supp.2d)

Not Reported in F.Supp.2d, 2001 WL 641737
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Michael S. PINKERT and Eleanor A. Pinkert, Plaintiffs,
v.
John J. OLIVIERI, P.A., Brosnahan Builders, Inc., Kevin Brosnahan and Linda Brosnahan, Defendants and Third-Party Plaintiffs,
v.
REEF INDUSTRIES, INC., Facilities Restoration Supply, Inc. and Preservation & Protection Systems, Inc., Third-Party Defendants,
v.
Ocean DESIGNS, Ocean Designs LLC and Paul Rouchard D/B/A Ocean Designs, Inc.; C. Joseph Couchman Tile Inc.; Doug Griffith Drywall; W.M. Plumbing & Heating, Inc. A/K/A and/or D/B/A Wm Plumbing & Heating, Inc.; and Advance Fiberglass Technologies, LLC., Additional Third-Party Defendants.
No. CIV. A. 99-380-SLR.

May 24, 2001.

Daniel B. Rath, Esquire of Klett, Rooney, Lieber & Schorling, P.C., Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Michael A. Gatje, Esquire of Wickwire Gavin, P.C., Vienna, Virginia.
Adam Balick, Esquire of Balick & Balick, Wilmington, Delaware. Counsel for Defendant and Third-Party Plaintiff John J. Olivieri, P.A.
Neal C. Belgam, Esquire of Blank, Rome, Comisky & McCauley, Wilmington, Delaware. Benjamin C. Wetzel, III, Esquire and Natalie M. Ippolito, Esquire of Bailey & Wetzel, P.A., Wilmington, Delaware. Counsel for Defendants and Third-Party Plaintiffs Brosnahan Builders, Inc., Kevin Brosnahan and Linda Brosnahan.
Loreto P. Rufo, Esquire of The Bayard Firm, Wilmington, Delaware. Counsel for Third-Party Defendants Reef Industries, Inc., Facilities Restoration Supply, Inc. and Preservation & Protection Systems, Inc.
Richard W. Pell, Esquire and Jennifer L. Gioia, Esquire of Tybout, Redfearn & Pell, Wilmington, Delaware. Counsel for Additional Third-Party Defendants Ocean Designs, Ocean Designs LLC and Paul Rouchard D/B/A Ocean Designs, Inc.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiffs Michael and Eleanor Pinkert filed this action on June 16, 1999 claiming damages arising out of the construction of their home in Bethany Beach, Delaware. Plaintiffs' complaint alleges breach of contract and various counts of fraud against defendants Brosnahan Builders, Inc., Kevin Brosnahan and Linda Brosnahan ("the Brosnahan defendants"), as well as breach of contract, professional negligence and negligent misrepresentation against defendant John J. Olivieri, P.A. ("Olivieri"). (D.I.1) On July 23, 1999, Olivieri filed a third-party complaint for indemnification and contribution against Reef Industries, Inc. ("Reef Industries") and Facilities Restoration Supply, Inc. ("Facilities Restoration"), which the court dismissed on September 29, 2000. (D.I.115) On August 21, 2000, the court granted the Brosnahan defendants leave to file a third-party complaint against Ocean Designs, Ocean Designs LLC and Paul Rouchard ("Ocean Designs"), W.M. Plumbing & Heating, Inc., and Advance Fiberglass Technologies, LLC, alleging breach of contract and negligence, and seeking indemnity and contribution. (D.I.101) On October 10, 2000, Ocean Designs filed a third-party complaint against Taco Metal, Inc. ("Taco Metal") for indemnification and contribution. (D.I.123) On November 20, 2000, the Brosnahan defendants filed a third-party complaint against Reef Industries, Facilities Restoration, and Preservation & Protection Systems, Inc. ("Preservation Systems"), alleging claims of negligence, breach of the implied warranty of fitness, and indemnification and contribution. (D.I.157) The court has jurisdiction pursuant to 28 U.S.C. § 1332.

Currently before the court are the Brosnahan defendants' motion for summary judgment on all claims against them (D.I.124), the Brosnahan defendants' motion for partial summary judgment that plaintiffs are not entitled to recover attorney's fees (D.I.221), the Brosnahan defendants' motion for protective order respecting pre-judgment discovery in aid of execution (D.I.218), Reef Industries' motion for summary judgment on all claims against it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2001 WL 641737
(Cite as: Not Reported in F.Supp.2d)

(D.I.225), Preservation Systems' motion for summary judgment on all claims against it (D.I.228), Facilities Restoration's motion for summary judgment on all claims against it (D.I.230), and Ocean Designs' motion for summary judgment on all claims against it. (D.I.233) For the following reasons, the court shall grant in part and deny in part the Brosnahan defendants' motion for summary judgment on claims against them; grant the Brosnahan defendants' motions for summary judgment that plaintiffs are not entitled to attorney's fees under paragraph 16(b) of the Construction Contract and for a protective order limiting discovery; grant in part and deny in part Reef Industries' motion for summary judgment on claims against it; grant Facilities Restoration's and Preservation Systems' motions for summary judgment on claims against them; and deny Ocean Designs' motion for summary judgment on claims against it.

## II. BACKGROUND

### A. Relevant Parties

*2 Plaintiffs are husband and wife who reside in McLean, Virginia. Defendant Brosnahan Builders, Inc. ("Brosnahan Builders") is a corporation organized under the laws of Delaware, with its principal place of business in Frankford, Delaware. Brosnahan Builders is primarily engaged in the business of constructing single family homes. Defendant Kevin Brosnahan is the president of Brosnahan Builders, and his wife, defendant Linda Brosnahan, is an employee of Brosnahan Builders. Kevin and Linda Brosnahan are Delaware residents and are sued in their individual capacities. Olivieri is a professional association organized under the laws of New Jersey, with its principal place of business in New Jersey. Olivieri is primarily engaged in the business of providing architectural services. (D.I.1) Reef Industries is a Texas corporation that manufactures vapor barriers used as siding in buildings. Facilities Restoration and Preservation Systems, Pennsylvania corporations, are distributors of Reef Industries' products. (D.I.157) Ocean Designs, a Maryland limited liability company, is a supplier and installer of aluminum railings. (D.I.240, Ex. A) Taco Metal is a Florida corporation that manufactures aluminum used in railings. (D.I.123)

### B. Facts

In 1995, plaintiffs purchased a beachfront property (the "Property") in Bethany Beach, Delaware to construct a three-story home (the "Residence"). On October 30, 1995, plaintiffs entered into an "Architecture Contract" with Olivieri that required Olivieri to create designs and plans, review shop drawings, provide specifications to the contractor and subcontractors, and meet with contractors on-site. (D.I.126, Ex. A)

On September 30, 1997, plaintiffs and Brosnahan Builders entered into a "Construction Contract" for the construction of the Residence for a price of approximately $1.5 million. (D.I.126, Ex. B) The Construction Contract provides, in pertinent part:

> 3. *Plans and Specifications.* (a) The Home shall be constructed and completed substantially in accordance with those certain plans and specifications more particularly identified by Exhibit "A" attached hereto and incorporated herein by reference ... FN1
>
>> FN1. The parties have not submitted "Exhibit 'A' " to the court, but the Brosnahan defendants allege that Olivieri's "Project Manual" is incorporated into the referenced "Plans and Specifications." (D.I.154, Ex. 2) The Project Manual in turn incorporates the "General Conditions of the Contract for Construction" published by the American Institute of Architects ("AIA"), which describes the AIA standard forms for progress payments (the G703 Continuation Sheet and G702 Application for Certification and Payment). (D.I.154, Ex. 3)
>
> 10. Changes in Plans and Specifications....
> (b) Owner may, at any time and from time to time prior to the Completion Date without invalidating this Agreement, require changes to the Work. Such changes may consist of additions, deletions, or modifications to the Plans and Specifications, with the Contract Sum and completion Date being adjusted accordingly. Such changes in the Work shall be authorized by written Change Order signed by Owner, Contractor and Architect, or by written Construction Change Directive signed by Owner and Architect. The Contract Sum and the Completion Date shall be changed only by Change Order....
> (c) Contractor shall be under no obligation to implement any change nor shall Owner [be] under any obligation to pay for the same unless and until

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the same is documented by such a change order. Likewise, no change in the Work shall be authorized absent a change order for same signed by Owner and no change order shall be [in] effect unless the same is signed by Owner.

*3 ...

12. *Payment.* (a)(i) Payments to the Contractor shall be paid in accordance with Exhibit B. FN2

> FN2. "Exhibit B" is the AIA standard G703 Continuation Sheet ("Continuation Sheet"), a list of the work that Brosnahan Builders was contracted to perform with a scheduled price for each item. Each Continuation Sheet references the AIA standard G702 Application and Certification for Payment ("Application and Certification for Payment"). (D.I.154, Ex. 4)

(ii) Progress invoices shall be accompanied by such documentation as Owner and/or Architect may reasonably require to verify the propriety of such request for payment. Following review of each such invoice (and its supporting documentation) by Owner, Architect and Owner's lender, and acceptance of the same, Owner shall, in exchange for appropriate mechanics' lien releases, satisfy such invoice.

...

16. *Indemnification.* (a) Owner agrees to defend, indemnify and hold Contractor harmless from and against any and all loss, cost, expense, liability, actions, and claims for injury suffered by Owner or others, including reasonable attorneys fees, or for harm caused to the Lot or the Home, due solely to inspections of the Home by Owner or Owner's invitees prior to Settlement.

(b) Contractor agrees to defend, indemnify and hold Owner harmless from and against any and all loss, cost, expense, liability, actions, and claims whatsoever (including, without limitation, reasonable attorneys fees and court costs) incurred by Owner incident to any malfeasance or nonfeasance by Contractor with respect to Contractor's responsibilities under the terms of this Agreement.

...

19. *Governing Law.* This Agreement shall be governed, construed and enforced in accordance with Delaware law.

(D.I.126, Ex. B)

Brosnahan Builders began construction of the Residence in September 1997 and completed the project in April 1999. (D.I.1) Brosnahan Builders subcontracted with Ocean Designs to deliver and install the exterior aluminum railings on the Residence, and with Reef Industries to deliver the vapor barrier used in the exterior siding. FN3 On fifteen occasions during construction, Brosnahan Builders submitted to Olivieri an AIA standard Application and Certification for Payment. FN4 Each was signed by Linda Brosnahan and provided:

> FN3. Olivieri's Plans and Specifications required the "VAPORguard wrap," which Brosnahan Builders ordered from Reef Industries. Reef Industries instead delivered the "T-65G wrap," which Brosnahan Builders installed onto the Residence. Reef Industries fully admits the delivery error, but claims that because of their similarity, there was no damage caused to the Residence by the T-65G wrap that would not have been caused by the VAPORguard wrap. (D.I.226)

> FN4. A Continuation Sheet with a list of services performed was appended to each Application and Certification for Payment. (D.I.144, Ex. 4)

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.(D.I.144, Ex. 4) Olivieri made several visits to the construction site and approved each Application and Certification for Payment, which also provided:

> In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

(D.I.144, Ex. 4) (emphasis in original)

*4 In November 1998, with construction substantially completed, plaintiffs and their family moved into the Residence. After a rainstorm in January, plaintiffs noticed water leaks around windows, doors and ceiling fixtures. Plaintiffs retained an independent moisture consultant, who concluded that the wrong

building wrap had been installed, there was no aluminum flashing around doors and windows, and there were no roof vents as provided by the Plans and Specifications. (D.I.1) Plaintiffs have since discovered other deficiencies, including corrosion of exterior railings, cracks in the marble tile floor, flaws in the drywall installation and finishing, leaking showers, defectively installed shower panes, and improperly installed fiberglass roofing. (D.I. 126, Ex. 1; D.I. 240, Ex. A) As of October 2000, plaintiffs have spent over $650,000 in remedial architectural and construction costs. (D.I.144, Ex. 3) Plaintiffs allege that when they confronted Kevin Brosnahan with the construction defects, he responded by asserting that he did not have the "manpower" or the "money" to remedy the problems, and that if pursued, he would "go bankrupt." (D.I.1)

C. Plaintiffs' Complaint

Count I of plaintiffs' complaint alleges breach of contract by Brosnahan Builders for failing to perform work in accordance with general industry standards and the Plans and Specifications provided by Olivieri. Count V alleges that Brosnahan Builders committed fraud by requesting payment for work that plaintiffs claim was not properly performed.

Count VI asserts that Kevin Brosnahan committed fraud in his individual capacity by requesting payments on behalf of Brosnahan Builders for work that plaintiffs claim was not performed in accordance with the Plans and Specifications and general industry standards. Counts VII and VIII allege that Linda Brosnahan committed fraud and equitable fraud in her individual capacity by signing payment requests on behalf of Brosnahan Builders for the work performed.

Counts IX, X, and XI assert that the Brosnahan defendants violated Delaware's Consumer Fraud Act, 6 Del. C. § 2513, by submitting payment requests on behalf of the Brosnahan Builders for work plaintiffs claim was not performed in accordance with the Plans and Specifications and general industry standards. FN5

> FN5. The **Consumer Fraud** Act provides, in pertinent part:
> The act, use or employment by any person of any deception, **fraud**, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the **sale**, **lease** or **advertisement** of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.
> 6 Del. C. § 2513(a).

Counts II, III and IV allege breach of contract, professional negligence and negligent misrepresentation by Olivieri for failure to adequately inspect and monitor the construction work, and for approving payment requests by the Brosnahan defendants for defective work.

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IV. DISCUSSION

### A. Plaintiffs' Fraud Claims Against the Brosnahan Defendants

*5 As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort. See _Garber v. Whittaker_, 174 A. 34, 36 (Del.Super.1934). "[A breach of contract claim] cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." _Iotex Communications, Inc. v. Defries_, 1998 WL 914265, at *5 (Del. Ch. Dec. 21, 1998). See also _Dann v. Chrysler Corp._, 174 A.2d 696, 700 (Del. Ch.1961) ("Using the word 'fraud' or its equivalent in any form is just not a substitute for the statement of sufficient facts to make the basis of the charge reasonably apparent.").

Plaintiffs allege that the Brosnahan defendants: (1) contracted to perform construction services; (2) failed to perform the services in the manner called for by the Construction Contract; and (3) submitted payment applications indicating the services had been performed according to the Construction Contract. The gravamen of plaintiffs' common law fraud, equitable fraud, and Consumer Fraud Act claims is that the Brosnahan defendants knowingly misrepresented the nature of their work each time they submitted an Application and Certification for Payment. These alleged misrepresentations were not collateral to the Construction Contract, but rather memorialized as some of the Brosnahan defendants' principal obligations under their agreement with plaintiffs. The duty to submit periodic payment applications existed solely by reason of the Construction Contract. Neither Brosnahan Builders, Kevin Brosnahan nor Linda Brosnahan violated any common law duty independent of the Construction Contract between Brosnahan Builders and plaintiffs. See, e.g., _Feinberg v. Saunders Karp & Megrue, L.P._, No. 97-297-SLR, 1998 WL 863284, at *17 (D.Del. Nov. 13, 1998) (dismissing fraud action under New York law where breached promise was incorporated into written agreement); _Richmond Metro. Auth. v. McDevitt St. Bovis, Inc._, 507 S.E.2d 344, 348 (Va.1998) (dismissing fraud claims based on contractor's alleged misrepresentations in submissions of applications for payment because no independent duty existed apart from construction contract).

Plaintiffs have also failed to present evidence that they were fraudulently induced into the Construction Contract. Such evidence may, in certain cases, give rise to an action in fraud. See, e.g., _Tam v. Spitzer_, No. 12538, 1995 WL 510043, at *6 (Del. Ch. Aug. 17, 1995). Here, plaintiffs' allegations arise solely from the Brosnahan defendants' performance of their contractual duties and are, therefore, insufficient to support a fraud claim. Thus, the court dismisses all of the fraud claims against the Brosnahan defendants (Counts V through XI) in plaintiffs' complaint. FN6

> FN6. The Brosnahan defendants also argue that plaintiffs' fraud claims are barred by the economic loss doctrine. See _Danforth v. Acorn Structures, Inc._, 608 A.2d 1194, 1195 (Del.1992) ("The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only losses suffered are economic in nature.") (emphasis in original). The 1996 Delaware Home Owner's Protection Act, however, has banned the application of the economic loss doctrine to certain residential construction cases:
> No action based in tort to recover damages resulting from negligence in the construction or manner of construction of an improvement to residential real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction shall be barred solely on the ground that the only losses suffered are economic in nature.
> 6 Del. C. § 3652. Based on the record presented, the court finds that if plaintiffs had alleged fraud claims based on duties apart from the Construction Contract, those claims would not be barred by the economic loss doctrine.

### B. Plaintiffs' Breach of Contract Claim Against the Brosnahan Defendants

*6 The Brosnahan defendants also argue that they are not liable for breach of the Construction Contract because they were acting under the direction of Olivieri. See _Ridley Inv. Co. v. Croll_, 192 A.2d 925,

927 (Del.1963) ("[A] contractor is not liable for any damage occasioned by a defect in plans and specifications furnished by the owner if he performs his work without neglect and in a workmanlike manner."). The Brosnahan defendants claim that any deviations from the Plans and Specifications were approved by Olivieri and, therefore, they are not liable for damage that resulted from those changes.

Based on the record presented, the court finds genuine issues of material fact as to whether the deviations from the Plans and Specifications that resulted in damage to plaintiffs' Residence were approved by Olivieri, as well as whether the Brosnahan defendants' work was performed "without neglect and in a workmanlike manner." Thus, summary judgment that the Brosnahan defendants are not liable to plaintiffs because they were acting as agents of Olivieri is denied.

C. Attorney's Fees Pursuant to Paragraph 16(b) of the Construction Contract

Plaintiffs allege that they are entitled to recover their attorney's fees from the Brosnahan defendants pursuant to paragraph 16(b) of the Construction Contract. The Construction Contract is governed by Delaware law, which states that "apart from statute or contract a litigant must pay his [own] counsel fees." Maurer v. Int'l Re-Insurance Corp., 95 A.2d 827, 830 (Del.1953). The Delaware Code, which allows recovery of attorney's fees when a lawsuit is based on a written instrument, states that "counsel fees shall not be entered as part of such judgment unless the note, bond, mortgage, invoice or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof ..." 10 Del. C. § 3912.

The court must determine, therefore, whether paragraph 16(b) of the Construction Contract expressly provides for the recovery of plaintiffs' attorney's fees. Paragraph 16(b) provides:
> Contractor agrees to defend, indemnify and hold Owner harmless from and against any and all loss, cost, expense, liability, actions, and claims whatsoever (including, without limitation, reasonable attorneys fees and court costs) incurred by Owner incident to any malfeasance or nonfeasance by Contractor with respect to Contractor's responsibilities under the terms of this Agreement.

(Emphasis added) The language "defend, indemnify and hold Owner harmless" clearly renders Paragraph 16(b) an indemnification provision which acts to protect plaintiffs from liability if they are sued by a third party for damage caused by "malfeasance or nonfeasance" by the Brosnahan defendants. Plaintiffs' belief that they are entitled to attorney's fees based on this indemnification provision is irreconcilable with the terms of the provision. The Brosnahan defendants cannot agree to "defend, indemnify and hold [plaintiffs] harmless" from a lawsuit filed against the Brosnahan defendants by plaintiffs themselves. Other Delaware courts have held that similar indemnification provisions are not applicable to claims between contracting parties; they are intended to protect one contracting party against liability from third party claims when the other contracting party is at fault. See, e.g., DRR, L.L.C. v. Sears, Roebuck and Co., 949 F.Supp. 1132, 1142 (D.Del.1996) ; Cannon and Son v. Dorr-Oliver, 394 A.2d 1160, 1165 (Del.1978). Therefore, the Brosnahan defendants' motion that plaintiffs are not entitled to attorney's fees pursuant to Paragraph 16(b) of the Construction Contract is granted.

D. Pre-Judgment Discovery of the Brosnahan Defendants' Assets

*7 The Brosnahan defendants have requested a protective order preventing pre-judgment discovery of their assets. The Federal Rules of Civil Procedure do not permit pre-trial discovery of a defendant's finances. See Gangemi v. Moor, 268 F.Supp. 19, 21-22 (D.Del.1967) ; McCurdy v. Wedgewood Capital Mgmt. Co., No. 97-4304, 1998 WL 964185, at *10 (E.D.Pa. Nov. 16, 1998) ("Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."). Two exceptions to this general rule have been recognized by Delaware courts, namely, if there is a "factual basis rising to the level of a triable issue for punitive damages," or if a plaintiff "can prove by a preponderance of the evidence that a defendant made a negligent misrepresentation of a material fact with the intent that a consumer rely upon it" under the Delaware Consumer Fraud Act. State ex rel. Brady, State of Delaware v. Wellington Homes, No. 99C-09-168-JTV, 2001 WL 238125, at *1 (Del.Super.Jan. 23, 2001).

The court is dismissing plaintiffs' fraud claims against the Brosnahan defendants, thereby rendering punitive damages unrecoverable from them. See E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d

436, 445 (Del.1996) ( "[P]unitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort."). Thus, the court finds no basis to deviate from the general rule prohibiting pre-trial discovery of the Brosnahan defendants' assets. The Brosnahan defendants' request for a protective order is granted.

### E. The Brosnahan Defendants' Claims Against Reef Industries

The Brosnahan defendants filed a third-party complaint against Reef Industries, alleging negligence, breach of the implied warranty of fitness for a particular purpose, and indemnification and contribution. The Brosnahan defendants do not oppose Reef Industries' motion for summary judgment as to the implied warranty claim, which is therefore dismissed.

Regarding the remaining negligence claim and indemnification and contribution claim, the court concludes that there exist genuine issues of material fact as to Reef Industries' liability. Reef Industries admits that it delivered the T-65G wrap instead of the VAPORguard wrap requested by Brosnahan Builders, and the parties appear to agree that all cited experts acknowledge that either wrap would have caused damage to the Residence. However, the record is unclear as to the difference in extent of damage caused by one type over the other type. Therefore, the court finds there are triable issues of fact on this issue, and declines to grant summary judgment on the remaining claims against Reef Industries.

### F. The Brosnahan Defendants' Claims Against Facilities Restoration and Preservation Systems

The Brosnahan defendants do not oppose motions for summary judgment by Facilities Restoration and Preservation Systems on all claims against them. Therefore, the court grants their motions for summary judgment and dismisses them from the case.

### G. The Brosnahan Defendants' Claims Against Ocean Designs

*8 Ocean Designs argues for summary judgment that it is not liable for the corrosion of plaintiffs' aluminum railings because if the corrosion was in fact due to a defect in the railings and not poor maintenance by plaintiffs, that defect was caused by Taco Metal, Ocean Designs' aluminum supplier. The court finds that there exists a genuine issue of material fact as to whether Ocean Designs is responsible for the defective aluminum railings. Although Ocean Designs may ultimately be found not to be at fault, Ocean Designs contracted with Brosnahan Builders to supply and install quality aluminum railings. To the extent that Taco Metal is responsible for the corroded aluminum, Ocean Designs is seeking indemnification and contribution from it. Based on the record presented, therefore, Ocean Designs' motion for summary judgment is denied.

### V. CONCLUSION

For the reasons stated, the court shall grant in part and deny in part the Brosnahan defendants' motion for summary judgment on claims against them; grant the Brosnahan defendants' motions for summary judgment that plaintiffs are not entitled to attorney's fees under paragraph 16(b) of the Construction Contract and for a protective order limiting discovery; grant in part and deny in part Reef Industries' motion for summary judgment on claims against it; grant Facilities Restoration's and Preservation Systems' motions for summary judgment on claims against them; and deny Ocean Designs' motion for summary judgment on claims against it. An appropriate order shall issue.

### ORDER

At Wilmington, this 24th day of May, 2001;

IT IS ORDERED that:

1. The Brosnahan defendants' motion for summary judgment on the claims (D.I.124) is granted in part and denied in part.

2. The Brosnahan defendants' motion for partial summary judgment that plaintiffs are not entitled to attorney's fees pursuant to paragraph 16(b) of the Construction Contract (D.I.221) is granted.

3. The Brosnahan defendants' motion for a protective order respecting pre-judgment discovery in aid of execution (D.I.218) is granted.

4. Reef Industries' motion for summary judgment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

(D.I.225) is granted in part and denied in part.

5. Preservation Systems's motion for summary judgment (D.I.228) and Facilities Restoration's motion for summary judgment (D.I.230) are granted.

6. Ocean Designs' motion for summary judgment (D.I.233) is denied.

D.Del.,2001.
Pinkert v. John J. Olivieri, P.A.
Not Reported in F.Supp.2d, 2001 WL 641737

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.