IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE HEN HOTEL, LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-221-JJF |
| CHARLES P. ARENA, | : |
| Defendant. | : |

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

BIFFERATO GENTILOTTI BIDEN & BALICK

Adam Balick (DE Bar No. 2718)
Joanne Ceballos (DE Bar No. 2854)
711 King Street
Wilmington, DE 19801
(302) 658-4265

Attorneys for Defendant
Charles P. Arena

Dated: October 4, 2005

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT..........................................................................................1

ARGUMENT...................................................................................................................2

I.  THE EXTENT OF LIABILITY UNDER THE PROMPT PAYMENT ACT CANNOT BE EXPANDED BY READING CONTRACTUAL OBLIGATIONS INTO THE ACT ..........................................................................................................2

II. BLUE HEN SHOULD NOT BE PERMITTED TO CONVERT A CLAIM ARISING ENTIRELY FROM ALLEGED BREACH OF CONTRACTUAL OBLIGATIONS INTO ONE FOR CONSUMER FRAUD ........................................................................ 3

A.  The Complaint Alleges Breach Of Purely Contractual Duties And Seeks Damages Which Flow Only From That Breach............................................................. 3

B.  This Court's Reasoning In *Pinkert v. Olivieri* Is Equally Applicable In This Case. ..........................................................................................................4

C.  The Rationale Of The Economic Loss Doctrine Bars Blue Hen's Statutory Fraud Claim. ..........................................................................................................6

D.  The Payment Applications Did Not Constitute Distinct Sales Of Arena & Co.'s Services. ..........................................................................................................7

CONCLUSION...................................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing Inc.*,
C.A. 98C-02-217WCC, 2002 WL 1335360 (Del. Super. June 13, 2002) ................................6,7

*Frazier v. American Airlines, Inc.*,
C.A. No. 03-792-JJF, 2004 U.S. Dist. LEXIS 19875 (D.Del. Sept. 30, 2004) .........................5

*Friendly Ice Cream Corp. v. Andrew E. Mitchell & Sons, Inc.*
340 A.2d 168 (Del. Super. 1975)................................................................................................2

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160, 174 (3rd Cir. 2001).............................................................................................7

*Iotex Communications, Inc. v. Defries*,
No. 15817, 1998 WL 914265 (Del. Ch. Dec. 21, 1998).............................................................5

*Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*,
C.A. No. 04C-05-091 CLS, 2005 Del. Super. LEXIS 57 (Del. Super. Feb. 23, 2005) .............5

*Pinkert v. Olivieri*
C.A. No. 99-380-SLR, 2001 WL 641737, *5 (D. Del. May 24, 2001)...................................4,5

*State v. Tabasso Homes, Inc.*, 28 A.2d 248, 254 (Del. 1942) ....................................................2

## STATUTES

6 *Del. C.* § 2513.........................................................................................................................1

6 *Del. C.* § 3501.........................................................................................................................1

6 *Del. C.* § 3503.........................................................................................................................1

## SUMMARY OF ARGUMENT

As alleged in the Complaint, and reaffirmed by Blue Hen in its Answering Brief in Opposition to Arena's Motion to Dismiss ("AB"), the crux of Blue Hen's claim is Arena & Co.'s alleged breach of contractual obligations (i) to pay subcontractors and (ii) to certify that such payments had been made. As a result of Arena & Co.'s bankruptcy, Blue Hen cannot recover damages for Arena & Co.'s alleged breach of contract, so Blue Hen is attempting to hold Arena & Co.'s principal liable for the company's breach by relying upon the Prompt Payment Act, 6 Del. C. §3501 ("PPA"), and the Consumer Fraud Act, 6 Del. C. §2513 ("CFA").[1] In doing so, Blue Hen urges the Court to interpret the PPA as imposing liability consistent with Arena & Co.'s alleged contractual obligations to Blue Hen, when the Delaware Superior Court has already interpreted the Act to limit a general contractor's liability for payments to subcontractors to those in contractual privity with the general contractor.

This Court has previously dismissed a CFA claim identical in all material respects to Blue Hen's claim in this case under the well-accepted principle that a tort claim does not lie for breach of a contractual obligation. There is no logical basis to arrive at a different result here, and, accordingly, Count II should be dismissed.

---

[1] Arena does not concede liability on Blue Hen's fraudulent conveyance claim, but, rather, has not challenged the facial adequacy of the allegations of Count III of the Complaint.

## ARGUMENT

I. **THE EXTENT OF LIABILITY UNDER THE PROMPT PAYMENT ACT CANNOT BE EXPANDED BY READING CONTRACTUAL OBLIGATIONS INTO THE ACT.**

As explained in Arena's opening brief in support of his motion to dismiss, the Delaware Superior Court has interpreted the phrase "owing by the contractor" in §3503 of the Prompt Payment Act to mean that the Act is violated only when a contractor fails to pay parties with which it has a contract. *Friendly Ice Cream Corp. v. Andrew E. Mitchell & Sons, Inc.*, 340 A.2d 168, 170 (Del. Super. 1975). Blue Hen does not claim that Arena & Co. had a direct contractual relationship with second and third tier subcontractors but, rather, that Arena & Co.'s contract with Blue Hen allegedly required Arena & Co. to pay such subcontractors. Blue Hen seeks to expand the scope of potential liability under the Prompt Payment Act, a statute which provides for the imposition of criminal sanctions, by reading into the statute particular purported terms of its contract with Arena & Co. But as noted by the Court in *State v. Tabasso Homes, Inc.*, 28 A.2d 248, 254 (Del. 1942), cited in Blue Hen's Answering Brief, the "penalty of the statute is not invoked by any reason of the contract, but only in case of the misapplication of money." Thus, the *Tabasso* case precludes interpreting Arena & Co.'s alleged obligations under the Prompt Payment Act as coextensive with its alleged contractual obligations.[2]

---

[2] Arena does not concede personal liability under the Prompt Payment Act under either a veil piercing theory or as "an agent of the contractor."

2

II. **BLUE HEN SHOULD NOT BE PERMITTED TO CONVERT A CLAIM ARISING ENTIRELY FROM ALLEGED BREACH OF CONTRACTUAL OBLIGATIONS INTO ONE FOR CONSUMER FRAUD.**

A. **The Complaint Alleges Breach Of Purely Contractual Duties And Seeks Damages Which Flow Only From That Breach.**

Paragraphs 6 through 16 of the Complaint plainly allege the existence of a contract between Blue Hen and Arena & Co., and a breach of that contract by Arena & Co. for alleged failure to fulfill a contractual obligation to pay subcontractors and failure to provide accurate certifications of payment as required under the contract. The damages alleged in the Complaint, payments to subcontractors, are all amounts Arena & Co. allegedly failed to pay subcontractors as required by the contract, and legal costs and expenses related to those payments. Complaint ¶16. These alleged damages were incurred only because Blue Hen allegedly did not receive the benefit of its bargain.

Consistent with the Complaint, Blue Hen's Answering Brief acknowledges that "[t]he *contract* imposed some very specific duties on Arena & Co. with regard to payment applications during the construction process. Under paragraph 11.3 of the contract, Arena & Co. was required to submit payment applications to Blue Hen." AB at 3 (emphasis added). "Arena & Co. owed Blue Hen a *contractual obligation* to submit payment applications," and "Arena & Co. falsely stated to Blue Hen that it had paid ... moneys to the subcontractors each time it submitted another monthly payment application." AB at 6 (emphasis by Blue Hen). So it is clearly the case that the essence of Blue Hen's claim is one for breach of *contractual* duties. In fact, Blue Hen readily admits that "[i]t was Arena & Co. that had the contractual duty to provide payment applications and pay the subcontractors," but it cannot recover from Arena & Co. for breach of contract because the company is bankrupt. AB at 9. It cannot recover from

3

Charles Arena for breach of contract because Blue Hen did not contract with Mr. Arena. So Blue Hen seeks instead to impose personal liability on Charles Arena, Arena & Co.'s principal, by alleging that Arena & Co.'s alleged breach of its contractual duties, in which Arena is alleged to have personally participated, constitutes fraud.

It is an unfortunate business reality that companies go bankrupt and those who contract with them may thereby be precluded from recovering contract damages. But despite the seeming inequity of that fact, the law does not permit a breach of contract claim to be converted into a tort in order to allow an aggrieved party to impose individual liability on a bankrupt entity's principal. As a sophisticated business entity, Blue Hen was in a position to bargain for the very relief it seeks now, by obtaining a personal guaranty of Arena & Co.'s contractual obligations from Arena. The creation of a tort remedy for breach of contract would essentially allow Blue Hen to extract a personal guaranty from Arena where none exists.

### B. This Court's Reasoning In *Pinkert v. Olivieri* Is Equally Applicable In This Case.

In *Pinkert v. Olivieri*, C.A. No. 99-380-SLR, 2001 WL 641737 (D.Del. May 24, 2001), this Court held that a Consumer Fraud Act claim does not lie for breach of a contractual duty. Contrary to Blue Hen's argument in its Answering Brief, there is no logical reason not to apply this Court's holding in *Pinkert* in this case. In *Pinkert*, the owner asserted CFA claims against the general contractor and, as in this case, its principals,[3] for allegedly submitting false applications and certifications for payment. The applications allegedly misrepresented the nature of the work performed, while Blue

---

[3] Blue Hen's Answering Brief omits mention of the fact that the plaintiff in *Pinkert* brought CFA claims against the builder *and its principals*.

4

Hen claims the applications submitted by Arena & Co. misrepresented the status of payment to contractors. In both cases, "[t]he duty to submit periodic payment applications existed solely by reason of the Construction Contract." *Pinkert*, 2001 WL 641737, *5. Neither the contractor in *Pinkert* nor Arena & Co. had an extra-contractual duty to make representations regarding work performed or payment of funds received. It is because the certification obligation arose from the parties' contract that the Court in *Pinkert* held an alleged breach of that obligation did not support a CFA claim, not because the alleged misrepresentation went to the nature of the work (as opposed to the status of payments).

Blue Hen argues that, unlike *Pinkert*, its fraud claim is not based entirely on Arena & Co.'s alleged breach of contract, but also upon Arena & Co.'s alleged violation of its "independent duty" under the Prompt Payment Act. Even assuming arguendo that Arena & Co. had an "independent duty" to pay subcontractors under the PPA, it is not that duty, but the contractual duty to accurately represent the status of payments to contractors, that Arena & Co. allegedly breached when it allegedly submitted false applications and certifications of payment. Arena & Co.'s duty to make representations regarding the status of payment to contractors was neither independent of, nor "collateral or extraneous to" the terms of the contract. *Iotex Communications, Inc. v. Defries*, No. 15817, 1998 WL 914265, *6 (Del. Ch. Dec. 21, 1998)(attached to Arena's Opening Brief as Exhibit C).[4]

---

[4] In both *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, C.A. No. 04C-05-091 CLS, 2005 Del. Super. LEXIS 57 (Del. Super. Feb. 23, 2005), and *Frazier v. American Airlines, Inc.*, C.A. No. 03-792-JJF, 2004 U.S. Dist. LEXIS 19875 (D.Del. Sept. 30, 2004), which are appended to Blue Hen's Answering Brief, the Court dismissed fraud claims which were based on allegations of breach of contractual obligations.

5

Because Arena & Co.'s duty to submit payment certifications existed solely by reason of its contract with Blue Hen (and any conceivable liability which could be imposed upon Arena individually could only arise from breach of that contractual duty), a cause of action for alleged breach of that duty lies only in contract, not in tort. Put another way, if there had been no contractual certification requirement, and Arena & Co. had simply failed to pay subcontractors, then there clearly would be no misrepresentation which Blue Hen could allege was false.

### C. The Rationale Of The Economic Loss Doctrine Bars Blue Hen's Statutory Fraud Claim.

> The economic loss doctrine "prohibits recovery in tort for losses unaccompanied by a bodily harm or a property damage." The doctrine in its purest form forbids plaintiffs from recovering in tort for losses suffered that are solely economic in nature. ... While initially a doctrine related to product liability actions, the courts have expanded the doctrine's application beyond its original scope to any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item.

*Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing Inc.*, C.A. 98C-02-217WCC, 2002 WL 1335360, *5 (Del. Super. June 13, 2002)(citations omitted)(attached hereto as Exhibit A). Blue Hen does not claim that its alleged damages are not purely economic in nature, or that the damages it allegedly sustained are other than those that flow from breach of contract. And Blue Hen apparently agrees that the economic loss rule applies when the plaintiff has a contract based cause of action. AB at n.8, p.12. Blue Hen argues, however, that a legislatively authorized statutory fraud claim should not be precluded by the "judicially created" economic loss doctrine. Blue Hen cites no authority for this proposition, nor is it the case that courts are constrained from invoking judicially created doctrines to limit the applicability of statutory remedies. *E.g.*,

6

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3rd Cir. 2001)(deceptive advertising claim under the Lanham Act, 15 U.S.C. §1125, may be barred by unclean hands).

In *Christiana Marine Service Corp.*, the Delaware Superior Court held that a claim of negligent misrepresentation arising in the context of a commercial relationship is barred by the economic loss doctrine. There is no logical basis to distinguish a Consumer Fraud Act claim from a negligent misrepresentation claim when both are alleged to arise from breach of contractual duties, unless one presumes that the Delaware General Assembly intended to eviscerate much of Delaware contract law by enacting the Consumer Fraud Act.

### D. The Payment Applications Did Not Constitute Distinct Sales Of Arena & Co.'s Services.

Arena does not argue that misrepresentations made in connection with the sale of services are not actionable under the CFA. Rather, Arena's position is that the sale of Arena & Co.'s services to Blue Hen occurred when Arena & Co. submitted its contract bid to Blue Hen, not each time it submitted a payment application to Blue Hen. Blue Hen's position that each payment application constituted a separate sale would also suggest that Blue Hen was free to terminate Arena & Co.'s services at any time, which, of course, Blue Hen has not alleged.

Moreover, the Complaint alleges that the periodic payment applications submitted pursuant to the contract included a statement that Arena & Co. had paid subcontractors for work for which payment had previously been requested and received from Blue Hen. Complaint ¶¶10-12. Thus, the alleged false certifications did not pertain to "[t]he exchange of services identified in the payment applications for payment," which Blue

7

Hen argues constitutes a sale of services (AB at 14), but rather concerned services for which payment had previously been made. Accordingly, by Blue Hen's own logic, the sale of services which were allegedly the subject of false certifications occurred prior to the time the certifications were made. Blue Hen was not defrauded, therefore, in connection with the sale of those services under the Consumer Fraud Act.

## CONCLUSION

For the foregoing reasons and those stated in Arena's Opening Brief, Arena requests that Count I of the Complaint be dismissed to the extent it seeks to recover payments which allegedly should have been made to Energy Products & Service Co. and Diversified Construction Staffing, Inc. Arena further requests that Count II of the Complaint be dismissed in its entirety for failure to state a claim under the Consumer Fraud Act. A form of order is submitted herewith.

BIFFERATO GENTILOTTI BIDEN & BALICK

Adam Balick (ID # 2718)
Joanne Ceballos (ID# 2854)
711 King Street
Wilmington, Delaware 19801
(302) 658-4265
Attorneys for Defendant
Charles P. Arena

Dated: October 4, 2005

## CERTIFICATE OF SERVICE

I, Joanne Ceballos, hereby certify that on the 4th day of October, 2005, the foregoing Reply Brief in Support of Defendant's Motion to Dismiss was served electronically upon the following:

>Frank Noyes II, Esquire
>White and Williams LLP
>824 North Market Street, Suite 902
>P.O. Box 709
>Wilmington, DE 19899-0709

*/s/ Joanne Ceballos*
Joanne Ceballos