IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE HEN HOTEL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-221-KAJ |
| | ) |
| CHARLES P. ARENA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

**I.  INTRODUCTION**

Before me is a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed by Defendant, Charles P. Arena ("Arena"). (Docket Item ["D.I."] 5; the "Motion".) The Complaint, filed by Blue Hen Hotel, LLC ("Blue Hen") alleges that Arena's company, C. Arena & Co., Inc. ("Arena & Co."), violated Delaware's Construction Prompt Payment Act,[1] 6 DEL. C. § 3501 *et seq.*, and that Arena, personally, violated Delaware's Consumer Fraud Act, 6 DEL. C. § 2513.[2] (D.I. 1 at ¶ 32.) Jurisdiction is appropriate under 28 U.S.C. § 1332. For the reasons that follow, the Motion will be granted in part and denied in part.

---

[1] Blue Hen is suing Arena personally under the Construction Prompt Payment Act on the theory that the corporate veil of Arena & Co. should be pierced. (D.I. 1 at ¶¶ 25-30.)

[2] Blue Hen further alleged in the Complaint that Arena violated the Delaware Fraudulent Conveyance Act, 6 DEL. C. § 1304. (D.I. 1 at ¶¶ 35-39.) Arena, however, did not address that allegation in his Motion.

## II.     BACKGROUND[3]

Blue Hen entered into an agreement (the "Agreement") with Arena & Co. on July 22, 2002, pursuant to which Arena & Co. was to serve as general contractor on a project to construct a 126 room hotel in Newark, Delaware. (D.I. 1 at ¶¶ 1,6- 8.) At all times relevant to the Complaint, Arena was president and sole owner of Arena & Co. (*Id.* ¶ 3.) Arena & Co. agreed to begin construction on the hotel on September 30, 2002, with the expected date of substantial completion being July 29, 2003. (*Id.* at ¶ 8.) The Agreement further required Arena & Co. to submit to Blue Hen payment applications that included the payment requests for all subcontractors on the project. (*Id.* at ¶ 10.) Pursuant to the Agreement, Blue Hen would then pay Arena & Co. for the work of all the subcontractors, and Arena & Co. would in turn pay the subcontractors within five working days. (*Id.*)

Arena & Co. allegedly submitted payment applications to Blue Hen that included sworn certifications that Arena & Co. had paid the subcontractors their share of all amounts previously received from Blue Hen. (*Id.* at ¶ 12.) Based on those payment applications, Blue Hen paid Arena & Co. a total of $1,676,402 that was owed to subcontractors, excluding retainage. (*Id.* at ¶ 13.) According to Blue Hen, Arena & Co. paid only $1,001,400 to the subcontractors, excluding retainage. (*Id.* at ¶ 13.) Consequently, several subcontractors sought to enforce mechanics liens against Blue Hen. (*Id.* at ¶ 14.)  Among those subcontractors were second and third tier

---

[3] The following rendition of background information is based on the allegations set forth in the Complaint, cast in the light most favorable to Blue Hen, and does not constitute findings of fact.

subcontractors with which Arena & Co. had not contracted directly. (*Id.* at ¶ 14.) Blue Hen paid the amounts necessary to dispose of the mechanics liens and now seeks to recover those amounts from Arena. (*Id.* at ¶¶ 15, 16.)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), all material allegations of the complaint must be accepted as true, and the complaint must be construed in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The moving party has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

### A. Construction Prompt Payment Act

Delaware's Construction Prompt Payment Act ("CPPA") states that "all moneys ... received by a contractor in connection with a contract for the ... construction ... of any building ... shall be trust funds in the hands of the contractor." 6 DEL. C. § 3502. It further states that "[n]o contractor ... shall pay out, use or appropriate any [such] moneys ... until they have first been applied to the payment of the full amount of all moneys due and owing by the contractor to all persons ... furnishing labor or material for the ... construction ...." 6 DEL. C. § 3503. The CPPA is plainly intended to protect property owners against the claims of subcontractors when the owner has already

made full payment to the general contractor, and to protect subcontractors against the misappropriation of funds by general contractors. . *Cf. State v. Tabasso Homes, Inc.*, 28 A.2d 248, 253 (Del. Ct. of Gen. Sessions 1942) (citing related criminal statute and stating, "[t]he statute has for its object both the protection of the owner whose property ... may be made liable for sub-contracts ... , and to give additional protection to the sub-contractors ... engaged upon the building."). In this case, Blue Hen alleges that it paid Arena & Co. money that was due to subcontractors, and that Arena & Co. failed to submit the full amounts to the appropriate subcontractors. (D.I. 1 at ¶ 13). According to Blue Hen, Arena & Co. improperly retained the funds designated for the subcontractors. (D.I. 1 at ¶ 28.)

Arena argues, however, that the CPPA does not apply to the amounts owed to second and third tier subcontractors, because Arena & Co. did not contract directly with those subcontractors. (D.I. 6 at 3-4.) To support that proposition, Arena relies exclusively on the case of *Friendly Ice Cream Corp. v. Andrew E. Mitchell & Sons, Inc.*, 340 A.2d 168 (Del. Super. Ct. 1975). In *Friendly Ice Cream*, the general contractor made full payment to the subcontractor that it had contracted with directly. *Id.* at 170. That subcontractor, however, failed to submit any of the payments to the second tier subcontractors that it had hired. *Id.* The court denied recovery from the general contractor because the general contractor had not retained any money owed to the subcontractors. *Id.* Further, the general contractor was under no duty to ensure that its direct subcontractor properly distributed the funds to the next level of subcontractors. *Id.*

4

In contrast, Blue Hen alleges that Arena & Co. directly misappropriated funds when it failed to make full payment to its own direct subcontractors. (D.I. 1 at ¶ 27-28.) According to Blue Hen, portions of the money retained by Arena & Co. were due to second and third tier subcontractors. (D.I. 1 at ¶ 13-14.) Nothing in *Friendly Ice Cream* prevents Blue Hen from holding Arena & Co. liable under the CPPA for improperly retaining funds held in trust for the second and third tier subcontractors.

I conclude that Blue Hen has sufficiently alleged a violation of the CPPA and will deny the Motion to the extent it seeks dismissal of Count I of the Complaint.[4]

**B.   Consumer Fraud Act**

Delaware's Consumer Fraud Act ("CFA") applies to any fraud or misrepresentation of a material fact used "in connection with the sale, lease or advertisement of any merchandise ...." 6 DEL. C. § 2513(a). The essence of Blue Hen's claim is that Arena violated the CFA each time he submitted payment applications falsely certifying that payment had been made to subcontractors. (D.I. 1 at ¶¶ 32-34.) Blue Hen, however, does not set forth any authority suggesting that the CFA should apply in a commercial and contractual relationship such as the one at issue.

On the contrary, Blue Hen's allegations are more consistent with a breach of contract claim. Generally, Delaware law requires a party to sue in contract and not in tort "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law ...." *Pinkert v. Olivieri, P.A.*, No. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001) (citing

---

[4] This ruling does not address Blue Hen's assertion that Arena is personally liable for Arena & Co.'s liability, if any, for violating the CPPA.

*Garber v. Whittaker*, 174 A. 34, 36 (Del. Super. 1934)).  Here, Arena's duty to submit payment applications existed solely because of the Agreement.  (D.I. 1 at ¶ 10.)  Consequently, Arena's failure to meet his contractual duties does not give rise to a CFA claim.

Thus, I conclude that the Complaint does not set forth a cognizable claim for a violation of the CFA, and the Motion to dismiss Count II is well-founded.

## V.   CONCLUSION

Accordingly, the Motion to Dismiss (D.I. 5) is GRANTED IN PART, to the extent that Count II of the Complaint is dismissed, and is DENIED IN PART, to the extent it seeks dismissal of Count I of the Complaint.

UNITED STATES DISTRICT JUDGE

October 16, 2006
Wilmington, Delaware